IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| EUGENIA BOTTA and GEORGE BOTTA, | |
| Plaintiffs, | |
| vs. | |
| CITY OF HAMILTON, GEORGIA; HARRIS COUNTY, GEORGIA; and MIKE BROWN, *in his official capacity*, | CASE NO. 4:18-CV-39 (CDL) |
| Defendants. | |

O R D E R

Eugenia and George Botta crashed while riding their bicycles east on Barnes Mill Road in Hamilton, Georgia where a bridge crosses over Palmetto Creek. They claim a road defect caused the wreck, and they seek to hold the City of Hamilton (the "City"), Harris County (the "County") and the County public works director, Mike Brown, liable for their injuries. Defendants assert the defenses of sovereign and official immunity and ask the Court to grant summary judgment in their favor based upon these defenses. For the reasons explained in the remainder of this order, the Court grants the motions of the County (ECF No. 17) and Brown (ECF No. 18) but denies the City's motion (ECF No. 30).

STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the

1

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

## THE ACCIDENT

At the time of the accident, George was riding a tandem bicycle with a blind military veteran.  His wife, Eugenia, followed behind them.  When they reached the western side of the bridge that crossed Palmetto Creek, George steered his bicycle toward the center of the road to avoid some gravel.  His front wheel lodged in a substantial crack in the road.  He lost control of his bicycle and veered to the right.  Eugenia then collided with George's bicycle.  All three occupants were hurled over the bridge guardrail onto the rocks, debris, and creek bed.

DISCUSSION

**I.  The City's Summary Judgment Motion**

The City moved for summary judgment based on O.C.G.A. § 32-4-93(b). That provision states: "A municipality is relieved of any and all liability resulting from or occasioned by defective construction of those portions of the . . . county road system lying within its corporate limits . . . unless the municipality constructed or agreed to perform the necessary maintenance of such road." *Id*. Palmetto Creek represents the boundary between the City to the east and unincorporated Harris County to the west. For purposes of its motion, the City agrees that the accident occurred inside the city limits. Thus, the only issue presented by the City's motion is whether the relevant portion of the bridge is part of the "county road system."

Under Georgia law, the state Department of Transportation (the "Department") must "prepare and distribute to each county a map showing all the public roads on its county road system including extensions into municipalities" at least every five years. *Id*. § 32-4-2(a)(1). The Department must also "keep written records of the mileage . . . on all public roads on each of the county road systems." *Id*. § 32-4-2(b). The "official record of a county road system" consists of the map and the Department's written mileage record. *Id*. § 32-4-2(f). Accordingly, the Court

looks to the map and written record to determine whether the bridge is part of the municipal or county road system.

The accident location appears as follows on the Department's official 2016 map:



See Pls.' Resp. Br. in Opp'n to City's Mot. for Summ. J. Ex. 1B, Enlarged Shot of 2016 Gen. Highway Map of Harris Cty., ECF No. 46-3. The map does not clearly show whether the accident occurred on road 205 (part of the County road system) or on road 20501 (part of the municipal road system). See Hill Aff. ¶ 8, ECF No. 45-1

(explaining the difference between roads "20501" and "205"). The official map is therefore inconclusive.

Further, neither party offered any evidence of the Department's "written record of the mileage" of the County road system. But, the Bottas did point to the Department's written records of the City road system, which indicate that the City owns .576 miles of Barnes Mill Road. *See* Hood Dep. Pls.' Ex. 8, Email from B. Stephens to R. Hood (Sept. 6, 2017), ECF No. 39 at 190-91. And based on the Bottas' expert's calculations, that distance includes the area of the bridge where the accident occurred. Hill Dep. Def.'s Ex. 14, Photos 51-52, ECF No. 49-2 (showing Bottas' expert standing at .576-mile mark). Thus, a reasonable jury could conclude that the "official record" of the County road system does not include the portion of the bridge where the accident occurred. Accordingly, it is not part of the "county road system lying within [the] corporate limits" of the City so as to confer immunity under O.C.G.A. § 32-4-93(b). Therefore, a genuine factual dispute exists as to whether the portion of the bridge was part of the "county road system" within the City's limits, and the City's motion for summary judgment on this ground is denied. *See City of Social Circle v. Sims*, 492 S.E.2d 240, 241 (Ga. Ct. App. 1997) (affirming trial court's denial of summary judgment based on

statutory immunity when fact question existed as to which public entity owned the defective road).[1]

Even if the Court concluded that the bridge was part of the "county road system" as a matter of law, the City's motion would still be denied because a genuine factual dispute exists as to whether the City "agreed to perform the necessary maintenance" of the bridge. O.C.G.A. § 32-4-93(b). Here, the City and County entered an intergovernmental agreement in 1995 wherein the County agreed "to provide routine pot hole repair on City streets and consider making other forms of street repairs, when requested, by [the City]." Chambers Dep. Pl.'s Ex. 12, 1995 Intergovernmental Agreement, ECF No. 38 at 196. Further, the City's public works director sought a local maintenance improvement grant to resurface Barnes Mill Road, although he later deferred the funding to another street. *See* Hood Dep. 42:19-24, ECF No. 39. Based on this evidence, a reasonable jury could conclude that the City's

---

[1] Another provision of that chapter provides that the county road system shall consist of public roads "which are shown to be part of that county road system by the department records on July 1, 1973, and any subsequent additions to such county road system made by the county." O.C.G.A. § 32-4-1(2). The City suggests that this language permits the Court to analyze any Department record ever created to determine the scope of the County road system, including the 1966 County highway map, documents from a 1987 construction project, bridge inspection reports, bridge inventory data listings, a national bridge inventory, the County road list, and the County's subsequent repairs of the bridge. The Court concludes that the "official record" is what the statute says it is, namely the map and written record of mileage. Accordingly, the City's department records evidence only highlights the genuine factual dispute about the bridge's status in this case.

6

obligation to request repairs from the County and the City's pursuit of funds to maintain the road constituted the "necessary maintenance" of the bridge surface. *See City of Fairburn v. Cook*, 372 S.E.2d 245, 251 (Ga. Ct. App. 1988) (concluding that municipality's decision to place traffic light on different side of pole authorized jury to conclude municipality waived its immunity by agreeing to perform necessary maintenance). Accordingly, the City's motion for summary judgment must be denied for this reason, also.

**II. The County's Summary Judgment Motion**

The County moved for summary judgment based on sovereign immunity. "As provided in Georgia's [C]onstitution, sovereign immunity extends to the counties, and a county's sovereign immunity 'can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.'" *Bd. of Comm'rs of Glynn Cty. v. Johnson*, 717 S.E.2d 272, 274 (Ga. Ct. App. 2011) (alteration in original) (quoting *McCobb v. Clayton Cty.*, 710 S.E.2d 207, 209 (Ga. Ct. App. 2011)). "A waiver of sovereign immunity must be established by the party seeking to benefit from that waiver." *Id*. (quoting *McCobb*, 710 S.E.2d at 209).

Here, the Bottas identified no legislative act waiving the County's sovereign immunity. Instead, they contend that the County waived its immunity by entering into the 1995 intergovernmental

agreement to repair the City roads. Such a contract-based waiver, however, does not apply to an action sounding in tort. *See Burton v. DeKalb Cty.*, 434 S.E.2d 82, 83-84 (Ga. Ct. App. 1993) (concluding that county's lease agreement with state employer did not waive county's sovereign immunity from state employee's personal injury claim based on county's alleged failure to maintain premises). The Bottas also appear to argue that the County waived its immunity by entering a "joint venture" with the City to maintain the roads. But none of the cases cited by the Bottas for this proposition actually discuss a county's sovereign immunity. *See generally DeKalb Cty. v. Lenowitz*, 463 S.E.2d 539 (Ga. Ct. App. 1995) (no discussion of sovereign immunity; concluding only that county could be jointly liable for inverse condemnation and continuing nuisance claims arising from joint city-county sewer system); *City of Eatonton v. Few*, 377 S.E.2d 504, 506-07 (Ga. Ct. App. 1988) (concluding that evidence supported jury's finding that city operated joint venture with county). Instead, a "joint venture" does not *waive* sovereign immunity, but rather makes both parties to the venture liable for any injuries assuming immunity is otherwise inapplicable. Accordingly, the Bottas' claims against the County for negligent maintenance of the bridge are barred by sovereign immunity. *See Woodard v. Laurens Cty.*, 456 S.E.2d 581, 582-83 (Ga. 1995) (finding that sovereign immunity

8

barred plaintiff's claim against county for failure to maintain stop sign).

As to the Bottas' claims against Brown in his official capacity, "suits against county employees in their official capacities are in reality suits against the county itself." *Johnson*, 717 S.E.2d at 276. "Because any recovery of damages would be paid out of the public purse, county employees sued in their official capacities are entitled to invoke the protection afforded by sovereign immunity." *Id*. Thus, the Bottas' claims against Brown in his official capacity fail for the same reasons explained above. To the extent the Bottas assert nuisance claims against the County and Brown in his official capacity, those claims are also subject to sovereign immunity. *See Johnson*, 717 S.E.2d at 276 (explaining that sovereign immunity bars actions against a county for personal injury arising from a nuisance). In sum, sovereign immunity bars all the Bottas' claims against the County and against Brown in his official capacity.

**III. Brown's Summary Judgment Motion**

Brown moved for summary judgment based on official immunity as to the Bottas' claims against him in his individual capacity. "A suit against a public official acting in his official capacity will be barred by official immunity unless the official negligently performed a ministerial duty or acted with actual malice or an actual intent to cause injury while performing a discretionary

9

duty." *Barnard v. Turner Cty.*, 701 S.E.2d 859, 862 (Ga. Ct. App. 2010); Ga. Const. Art. I, § 2, ¶ IX(d). The Bottas do not contend that Brown acted with actual malice or intent to cause injury in performance of a discretionary duty. Instead, they argue that Brown had a ministerial duty to repair two defects in the bridge they contend caused the accident: (1) unsealed expansion joints and (2) cracks in the asphalt.

If Brown breached a ministerial duty, he would not be protected by official immunity. However, if his alleged liability arises from a discretionary act, he enjoys the protection of official immunity. Georgia courts have distinguished ministerial and discretionary acts as follows:

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

*Banks v. Happoldt*, 608 S.E.2d 741, 744 (Ga. Ct. App. 2004) (quoting *Happoldt v. Kutscher*, 567 S.E.2d 380, 382 (Ga. Ct. App. 2002)). "Whether the acts upon which liability is predicated are ministerial or discretionary is determined by the facts of the particular case." *Id*. at 745 (quoting *Woodard*, 456 S.E.2d at 583). "A ministerial duty may be established by evidence such as a written policy, an unwritten policy, a supervisor's specific

directive, or a statute." *Jobling v. Shelton*, 779 S.E.2d 705, 710 (Ga. Ct. App. 2015) (quoting *Roper v. Greenway*, 751 S.E.2d 351, 353 (Ga. 2013)). "Procedures or instructions adequate to cause an act to become merely ministerial must be so clear, definite and certain as merely to require the execution of a relatively simple, specific duty." *Id.* (quoting *Roper*, 751 S.E.2d at 353).

Even viewing the facts in the light most favorable to the Bottas, Brown received no actual notice of the road defect that allegedly contributed to the Bottas' accident. No one specifically reported the alleged defect to him. The only evidence of notice relied upon by the Bottas consists of bridge inspection reports sent by the Department to the County in 2012 and 2014. These reports included references to the alleged defects. *See* Wood Dep. Pl.'s Ex. 19, Letter from A. Doyle to H. Lange (Mar. 17, 2014), ECF No. 33 at 134, 145 (noting that deck joints throughout the bridge have failed and should be cleaned and sealed); *id.* Pl.'s Ex. 26, Letter from A. Doyle to H. Lange (July 9, 2012), ECF No. 33 at 178, 189 (same); *id.* Ga. Dep't of Transp. Bridge Inspection Report (Dec. 27, 2011), ECF No. 33 at 196 (noting that "[j]oints need sealing" and that "[a]sphalt approaches have cracking"); *id.* Ga. Dep't of Transp. Bridge Inspection Report (Oct. 30, 2013), ECF No. 33 at 201 (same). Although no evidence has been presented that Brown had actual knowledge of the reports of the specific defects implicated in the Bottas' accident, circumstantial

11

evidence exists that he had access to the reports, and for purposes of summary judgment, one could conclude that he had constructive knowledge of what was contained in the reports. *See* Brown Dep. 11:21-12:2, ECF No. 34 (explaining that Brown served as road superintendent before becoming public works director in 2015); Lange Dep. 28:3-11, ECF No. 48 (County Commission chairman's testimony that he provided bridge inspection reports to road superintendent).

Even if Brown had notice of the relevant defects, his duty to repair those defects was discretionary, not ministerial. The County had no written policy regarding the repair of road defects. And its unwritten policy was based more on common sense than established directives. As the County manager (Brown's supervisor) aptly noted, "if there's a hazard that we're not aware of and we're made aware of it, we attend to it as soon as possible." Wood Dep. 29:9-11. Such an indefinite "policy" certainly contemplates that Brown would consider all of the circumstances, and then make a judgment as to when to repair which defects. Obviously, if a defect posed an immediate safety hazard, then it would be placed higher on the priority list. But comparing a pothole to a seal gap in a roadway required a judgment call by Brown. This type of policy is not so clear, definite, and certain as merely to require the execution of a relatively simple, specific duty. Instead, Brown needed to prioritize repair of the bridge

defects with the many other potholes and cracks throughout the County and address it "as soon as possible." The County's policy necessarily required that Brown use his judgment to determine how soon he could perform the repairs and how the urgency of those repairs compared to other issues in his purview. It is well established under Georgia law that when a county employee is provided with such discretion, he is entitled to official immunity. *See Banks*, 608 S.E.2d at 747 ("Beyond the specific concept of resource allocation, as a general matter county road officials 'necessarily [have] discretionary powers as to what work should be done, when, how and where necessary.'" (alteration in original) (quoting *Vickers v. Motte*, 137 S.E.2d 77, 79 (Ga. Ct. App. 1964))); *see also Gentry v. Hutchins*, 738 S.E.2d 92, 95 (Ga. Ct. App. 2013) (finding that county employees had discretion regarding when to execute work orders and were therefore entitled to official immunity); *Norris v. Emanuel Cty.*, 561 S.E.2d 240, 244 (Ga. Ct. App. 2002) (concluding that road superintendent who had discretion regarding when to repair washed out intersection enjoyed official immunity).

The Court notes that even if a citizen had taken Brown aside and specifically informed him of the crack in the middle of the bridge in question, Brown would have been required to evaluate how and when to fix that crack. There was no policy that required him to fix it immediately or within a certain time period. And it is

13

undisputed that he was never directed by any superior to fix the crack in question; nor did any policy clearly suggest how he should approach fixing such a crack. His only direction was to fix road defects as soon as possible.

The approach to the repair of road defects by Brown's boss, the County manager, confirms the discretionary nature of the exercise. The County manager testified that he reviewed the bridge reports that included the defect that allegedly caused the Bottas' accident and, after doing so, prioritized those bridges that had the most serious defects. The bridge in question was not at the top of the list. *See* Wood Dep. 23:24-24:1; *see also id*. at 45:20-24 (explaining that County retained bridge specialists to "triage" the problems identified in the reports and that County could only fund a few of the proposed repairs). It is undisputed that the County manager never instructed Brown to perform the repairs on the defect in question; he knew that they would get around to it "as soon as possible" based on all the other priorities. The County manager's approach confirms the discretionary nature of the County policy and practice.

Brown's duty to repair the defects identified in the bridge reports that allegedly contributed to the accident in question required the exercise of discretion on Brown's part. He was not simply faced with a ministerial task. Accordingly, Brown is

entitled to official immunity on the Bottas' claims against him in his individual capacity.[2]

CONCLUSION

As explained above, the County is entitled to sovereign immunity and Brown is entitled to official immunity in this action. Genuine factual disputes still remain as to the Bottas' claims against the City. Accordingly, the County's motion for summary judgment (ECF No. 17) is granted, Brown's motion for summary judgment (ECF No. 18) is granted, and the City's motion (ECF No. 30) is denied.

The Court interpreted the Bottas' original complaint to include the claims against Brown in his individual capacity, and the Court has granted summary judgment in favor of Brown as to those claims. Thus, the Bottas' motion to amend their complaint (ECF No.43) to include such claims is denied as moot. Had the Court construed the Bottas' original complaint not to include such claims, it nevertheless would have denied the motion to amend as futile because the claims are barred by official immunity for the reasons explained in this Order.

---

[2] Given the Court's ruling, it is unnecessary to address Brown's alternative argument that he is entitled to summary judgment pursuant to the Recreational Property Act, O.C.G.A. § 51-3-20 *et seq*.

15

IT IS SO ORDERED, this 16th day of May, 2019.

                                                S/Clay D. Land
                                                CLAY D. LAND
                                                CHIEF U.S. DISTRICT COURT JUDGE
                                                MIDDLE DISTRICT OF GEORGIA